IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ROBIN R. SMITH,

      Plaintiff,

v.                                          CASE NO. 2:04-cv-00604

JO ANNE BARNHART,
Commissioner of Social Security,

      Defendant.


## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the
Commissioner of Social Security denying the Claimant's application
for Supplemental Security Income ("SSI") under Title XVI of the
Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was
referred to this United States Magistrate Judge by standing order
to consider the pleadings and evidence, and to submit proposed
findings of fact and recommendation for disposition, all pursuant
to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court
are cross-motions for judgment on the pleadings.

Plaintiff, Robin R. Smith (hereinafter referred to as
"Claimant"), protectively filed an application for SSI on August 6,
2002, alleging disability as of March 1, 2001, due to bipolar
disorder and anxiety.  (Tr. at 75-77, 93.)  The claim was denied
initially and upon reconsideration.  (Tr. at 46-50, 53-55.)  On
April 3, 2003, Claimant requested a hearing before an

Administrative Law Judge ("ALJ"). (Tr. at 56.) A hearing was held on October 10, 2003, before the Honorable Theodore Burock. (Tr. at 280-312.) By decision dated February 27, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-26.) The ALJ's decision became the final decision of the Commissioner on May 26, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 7-10.) On June 17, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers

2

from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at

17.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of a knee impairment, headaches, anxiety and a bipolar disorder.  (Tr. at 18.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 19-20.)  The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations.  (Tr. at 23.) As a result, Claimant cannot return to her past relevant work.  (Tr. at 23.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as warehouse worker, vehicle cleaner and groundskeeper, which exist in significant numbers in the national economy.  (Tr. at 24.)  On this basis, benefits were denied.  (Tr. at 25.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In  <u>Blalock v. Richardson</u>,  substantial  evidence  was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)).

4

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was thirty-eight years old at the time of the administrative hearing.  (Tr. at 283.)  Claimant completed the ninth grade and earned her GED.  (Tr. at 285.)  In the past, she built electronic circuit boards and meters.  (Tr. at 302.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record.  Claimant's challenges to the ALJ's decision relate to his findings about Claimant's mental impairments and, as such, the court will briefly summarize that evidence of record.

Evidence before the ALJ

The record includes treatment notes from the Robert C. Byrd Health Sciences Center dated August 31, 2001, February 5, 2002 (telephone consultation), April 9, 2002 (telephone consultation),

June 6, 2002 (telephone consultation), and June 10, 2002.  (Tr. at 134-38.)  On August 3, 2001, Elizabeth McClellan, M.D. diagnosed Claimant with bipolar affective disorder, mixed with rapid cycling. Claimant had improved on Neurontin, but was still having racing thoughts.  Claimant reported her thoughts had slowed down, and she was tracing less.  (Tr. at 138.)  On February 5, 2002, Claimant reported to Dr. McClellan by phone that she was starting medical assistant school.  Claimant's energy level was good.  She continued to trace things.  (Tr. at 137.)  At another telephone consultation on April 9, 2002, Claimant requested medical leave from school because she felt overwhelmed.  Dr. McClellan advised Claimant that she would have to be seen in person before she would sign a medical excuse.  Dr. McClellan noted that Claimant was to make an appointment within thirty days of her last telephone consultation on February 5, 2002, but that she had not done so.  Claimant reported she was not suicidal or homicidal.  (Tr. at 136.)  On June 6, 2002, Kiran Devaraj, M.D. spoke with Claimant by telephone and noted that Claimant stated she did not want to see Dr. McClellan because she would not give her medication.  Dr. Devaraj encouraged Claimant to make an appointment, as she had last been seen in person on August 3, 2001.  Dr. Devaraj prescribed more medication until her next appointment.  (Tr. at 135.)  On June 10, 2002, Dr. Devaraj saw Claimant in person, and she reported Neurontin helped her condition.  Claimant complained of situational stressors,

6

including a divorce, attending school and the fact that her father was to be released from prison. Claimant's affect was euthymic. Claimant was alert and oriented. Dr. Devaraj increased Claimant's Paxil and continued the Neurontin. (Tr. at 134.)

On October 21, 2002, LaRee Naveaux, Ph.D., a State agency medical source, completed a Mental Residual Functional Capacity Assessment and opined that Claimant was moderately limited in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 147-48.) Dr. Naveaux opined that if Claimant continued her medication "on a regular basis in a year's time [she] would with anxiety and bipolar [disorder] under control be able to perform 1-2 step work tasks." (Tr. at 149.)

Dr. Naveaux also completed a Psychiatric Review Technique form on October 21, 2002, and opined that Claimant was moderately limited in activities of daily living, moderately limited in maintaining social functioning, markedly limited in maintaining concentration, persistence and pace and had no repeated episodes of

7

decompensation. (Tr. at 152-64.) Dr. Naveaux again indicated that with medication, Claimant's condition should improve. (Tr. at 164.)

The record includes two letters from Mark N. Casdorph, D.O. dated September 19, 2002, and February 10, 2003, in which Dr. Casdorph writes that he has treated Claimant since July of 2002, for bipolar affective disorder, not otherwise specified and anxiety disorder, not otherwise specified. (Tr. at 166-67.)

Robert Solomon, Ed.D., a State agency medical source, completed a Psychiatric Review Technique form on March 11, 2003. He opined that Claimant's mental impairments were not severe. (Tr. at 177-89.)

On July 8, 2003, Sheila Emerson Kelly, M.A. performed a psychological evaluation at the request of Claimant's counsel. Claimant reported her anxiety attacks were controlled with medication, and the last one she had was mild and occurred about three months ago. Claimant reported she had recently attempted to return to school and had enrolled in a medical assistance program at a junior college. She enrolled in this program to keep certain state benefits. She reported being unable to concentrate and eventually quit. Claimant reported that her psychologist, Dr. Casdorph, refused to write her an excuse, saying he wanted Claimant to keep trying. (Tr. at 197-99.) Claimant lived in HUD subsidized housing. She reported being able to drive. Claimant reported

8

compulsive tracing behavior, where she traces things in her mind (windows, the television, etc.). (Tr. at 200.) Claimant reported she had a boyfriend whom she saw daily. They went out to eat occasionally and to nightclubs about once a month. They sometimes visited her boyfriend's father and rode the father's four-wheeler. Claimant's range of affect was good and generally, her mood was within normal limits. (Tr. at 201.) Ms. Kelly felt there was little evidence to support a diagnosis of bipolar disorder, although Claimant did have poor control of her attention. Claimant had some obsessional problems and poor anger management, but many of those problems related back to her dysfunctional childhood. (Tr. at 202.) Ms. Kelly diagnosed anxiety disorder, not otherwise specified, personality disorder, not otherwise specified with avoidant, dependent, obsessive and passive-aggressive characteristics. (Tr. at 204.)

Ms. Kelly completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) on July 8, 2003. She opined that Claimant had a fair ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, work with or near others without being distracted by them, complete a normal workday and workweek and perform at a consistent pace, interact appropriately with the public and accept instructions and respond appropriately

9

to criticism from supervisors.  She opined that Claimant had a good ability in all other areas.  (Tr. at 207-08.)

Dr. Casdorph completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) dated October 10, 2003.  He opined that Claimant had a poor ability to carry out short, simple instructions, understand, remember and carry out detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual, work with or near others without being distracted by them, complete a normal workday or workweek, interact appropriately with the public and accept instructions and respond appropriately to criticism from supervisors.  (Tr. at 214-16.)  He opined that Claimant had mostly fair and, in some cases, good abilities in all other areas.  (Tr. at 214-16.)

Evidence before the Appeals Council

Claimant submitted a note from Dr. Devaraj dated June 10, 2002, which stated that Claimant had been seen at the "behavioral medicine clinic since July 2001. She has not been able to return to class since April 2002 due to medical reasons.  She can start back on June 27th 2002."  (Tr. at 278.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ improperly disregarded the opinion of Claimant's treating psychologist, Dr.

Casdorph; (2) the ALJ relied upon misstatements and/or distortions of fact in findings related to Claimant's mental impairments; and (3) the ALJ's hypothetical question was deficient.  (Pl.'s Br. at 7-13, Pl.'s Reply at 1-3.)

The Commissioner argues that (1) the ALJ complied with the applicable regulations in evaluating the functional limitations outlined by Dr. Casdorph; (2) the ALJ accurately described the evidence of record; and (3) substantial evidence supports the ALJ's determination that Claimant could perform the occupations identified by the vocational expert.  (Def.'s Br. at 8-14.)

Claimant argues that the ALJ improperly rejected the Medical Source Statement of Ability to do Work-Related Activities (Mental) completed by Dr. Casdorph on October 10, 2003.  (Pl.'s Br. at 7-8.) Claimant asserts that the ALJ ignored evidence from Dr. Casdorph that Claimant's social activities vary according to the lability of her mood so that what she might be able to do during one period of time, she cannot do during another period of time.  (Pl.'s Br. at 9.)  Finally, Claimant points out that while she told Ms. Kelly that Dr. Casdorph refused to give her an excuse from attending school because of her mental impairments, this was incorrect. Instead, Claimant received an excuse from Robert C. Byrd Health Sciences Department of Behavioral Medicine, and Dr. Casdorph noted on his Medical Source Statement of Ability to do Work-Related Activities (Mental) that Claimant was unable to "sustain effort ...

11

at school ...." (Pl.'s Br. at 10; Tr. at 215.)

In his decision, the ALJ determined that Claimant suffers from the severe mental impairments of anxiety and a bipolar impairment. (Tr. at 18.) Regarding the weight afforded Dr. Casdorph's opinion, the ALJ explained that his "treatment has, pursuant to the documentary evidence and testimony, been quite limited and conservative in nature. The type of treatment rendered is not in keeping with his numerous fair and poor ratings in Exhibit 11F. There is therefore no evidentiary support for it and his opinion is rejected (20 CFR 416.927)." (Tr. at 23.) The ALJ concluded that Claimant is limited to medium level exertional work, further limited by an ability to perform routine, repetitive tasks, incidental public contact and an inability to perform piece rate or production line work, among others. (Tr. at 23.)

In rejecting the testimony of the vocational expert that Claimant would be disabled if the limitations on the Medical Source Statement of Ability to do Work-Related Activities (Mental) from Dr. Casdorph were included in a hypothetical question, the ALJ further explained that

> his opinion is not consistent with the type of treatment
> rendered (three month medication checks[)] and the
> claimant's testimony about seeing him on a six week basis
> (or more) if needed. Doctor Casdorph earlier refused to
> find the claimant mentally incapable of attending her
> health care training classes. Inferences attributable to
> this situation and the type of mental health treatment he
> has provided are in fact consistent with assumptions in
> the first hypothetical question the undersigned
> proffered.

12

(Tr. at 24.)

The court proposes that the presiding District Judge find that the ALJ properly weighed the opinion of Dr. Casdorph in keeping with the applicable regulation and case law and that his findings are supported by substantial evidence.  See Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996) (a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence"); 20 C.F.R. § 416.927(d)(3), (4), and (5) (2004) (in evaluating medical opinions, the ALJ should consider factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty)).

As the ALJ explained in his decision, there is no evidentiary support for Dr. Casdorph's opinion on the Medical Source Statement of Ability to do Work-Related Activities (Mental).  Dr. Casdorph provided little in the way of objective support for his conclusions on the Medical Source Statement of Ability to do Work-Related Activities (Mental) itself.  Though efforts were made by both the ALJ and Claimant's counsel to obtain additional evidence from Dr.

13

Casdorph (Tr. at 73, 124), aside from the Medical Source Statement of Ability to do Work-Related Activities (Mental), there are two brief letters of record from Dr. Casdorph dated September 19, 2002, and February 10, 2003, which only indicate Claimant's diagnoses and medication treatment.  (Tr. at 166-67.)

Nor does the remaining substantial evidence of record support Dr. Casdorph's extreme limitations.  Treatment notes from Robert C. Byrd Health Sciences Center indicate Claimant's condition improved with medication.  The State agency medical sources opined Claimant's mental impairments were either not severe (Tr. at 177) or moderately limiting but capable of improvement with medication (Tr. at 162, 164).  While Ms. Kelly's limitations opined on the Medical Source Statement of Ability to do Work-Related Activities (Mental) were appropriately rejected by the ALJ as inconsistent with her clinical observations, the substance of her report as cited above is consistent with the mental limitations found by the ALJ.  Notably, Claimant reported to Ms. Kelly that her anxiety attacks were under control and that the last one had been mild and occurred three months ago.  (Tr. at 198.)  Ms. Kelly found that Claimant's range of affect was good and that generally, her mood was within normal limits.  (Tr. at 201.)

In addition, Claimant's daily activities and level of social functioning, particularly as she recounted them to Ms. Kelly, do not suggest an individual severely limited by her mental

14

impairments.  While Claimant argues that the ALJ did not appreciate the up and down nature of her condition, substantial evidence of record does indicate significant daily activities occurring on a frequent enough basis such that Claimant was not limited to the point of disability by her mental impairments.

Claimant points out that although she recounted to Ms. Kelly that Dr. Casdorph "refused to write her an excuse to get out of having to participate in that [school] program, saying 'he wanted me to keep trying'" (Tr. at 199), this was incorrect.  Instead, Claimant received an excuse from the Robert C. Byrd Health Sciences Center.  In addition, she asserts that Dr. Casdorph opined that Claimant was "unable to sustain effort at work setting or at school" (Tr. at 215) on the Medical Source Statement of Ability to do Work-Related Activities (Mental) he completed on October 10, 2003.  (Pl.'s Br. at 9.)

The ALJ did not err in finding that Dr. Casdorph's opinion on the Medical Source Statement of Ability to do Work-Related Activities (Mental) was not supported by the evidence of record, in part, because Dr. Casdorph had "earlier refused to find the claimant mentally incapable of attending her health care training classes." (Tr. at 24.)

Courts have applied a harmless-error analysis in the context of Social Security appeals.  One illustrative case provides:

> Moreover, "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate

15

> a judgment unless the substantial rights of a party have
> been affected." <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364 (5th
> Cir.1988). The procedural improprieties alleged by Morris
> will therefore constitute a basis for remand only if such
> improprieties would cast into doubt the existence of
> substantial evidence to support the ALJ's decision.

<u>Morris v. Bowen</u>, 864 F.2d 333, 335 (5th Cir. 1988); <u>Fisher v.
Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989)("No principle of
administrative law or common sense requires us to remand a case in
quest of a perfect opinion unless there is reason to believe that
the remand might lead to a different result."). Our Court of
Appeals, in a number of unpublished decisions, has taken the same
approach. <u>See</u>, <u>e.g.</u>, <u>Bishop v. Barnhart</u>, No. 03-1657, 2003 WL
22383983, at *1 (4th Cir. Oct 20, 2003); <u>Camp v. Massanari</u>, No. 01-
1924, 2001 WL 1658913, at *1 (4th Cir. Dec 27, 2001); <u>Spencer v.
Chater</u>, No. 95-2171, 1996 WL 36907, at *1 (4th Cir. Jan. 31, 1996).

     Claimant did state to Ms. Kelly that "Dr. Casdorph refused to
write her an excuse to get out of having to participate in that
program, saying 'he wanted me to keep trying.'" (Tr. at 199.)  The
ALJ's observation was a reasonable one even though it was actually
Dr. McClellan at the Robert C. Byrd Health Sciences Center who
refused to write the excuse.  In any event, the fact remains that
Claimant's treating source declined to excuse Claimant from work
because of her mental impairments.  Claimant points out that she
submitted evidence to the Appeals Council indicating that Dr.
Devaraj ultimately excused her from attending school because of her

mental impairments.  Claimant omits the fact that the excuse states that while Claimant could not attend school from April through June of 2002 "due to medical reasons," she was able to "start back on June 27th 2002." (Tr. at 278.)

Based on the above, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's weighing of the evidence from Claimant's treating physician, Dr. Casdorph.

Claimant next argues that the ALJ misrepresented certain facts.  In particular, Claimant asserts that the ALJ concluded Claimant's anxiety was caused by the release of her spouse from prison, when her spouse was never in prison and instead, it was her father who was released from prison.  Claimant asserts that the ALJ refers to multiple marriages, but that Claimant was only married once.  Claimant asserts that the ALJ noted a seven month gap in treatment, when in fact, there was no such gap. (Pl.'s Br. at 9.)

In his decision, the ALJ acknowledged the evidence of record from the Robert C. Byrd Health Sciences Center and noted that "[t]he June 2002 handwritten summary refers to anxiety relating to a pending divorce, college, and what appear to be her spouse[']s pending prison release." (Tr. at 18.)  In fact, the treatment note refers to the release of Claimant's father from prison, as one of several stressors in her life. (Tr. at 134.)  In addition, the ALJ refers to Claimant's "marriages" in rating her abilities in the

17

four areas of functioning (Tr. at 20), when in fact, Claimant has been married only once.  The above misstatements were minor and inconsequential.  The ALJ appreciated the content of the treatment note recounting stressors in Claimant's life, and the court cannot ascertain how the ALJ's misstatements would cause the ALJ's decision not to be supported by substantial evidence.

Claimant asserts that the ALJ incorrectly referred to Ms. Kelly's observation of a seven month gap in treatment, when, according to Claimant, there was no such gap.  Claimant asserts that she was last seen at the Robert C. Byrd Health Sciences Center on June 10, 2002 (Tr. at 134), and started treatment with Dr. Casdorph in July of 2002 (Tr. at 166).  (Pl.'s Br. at 9.)

In summarizing evidence from Ms. Kelly, the ALJ observed that "[c]onsistent with psychiatric evidence in the written record (Exhibits 1F through 3F and 6F), psychologist Kelly noted an eight month gap with respect to mental health treatment the claimant received from Charleston Area Medical Center, and the time she started seeing Doctor Casdorph (p. 6)."  (Tr. at 19.)

The record includes treatment notes from Robert C. Byrd Health Sciences Center dated August 31, 2001, February 5, 2002 (telephone consultation), April 9, 2002 (telephone consultation), June 6, 2002 (telephone consultation), and June 10, 2002.  (Tr. at 134-38.)  Dr. Casdorph stated that he began treating Claimant in July of 2002. (Tr. at 166.)

18

Ms. Kelly's statement in her report is somewhat ambiguous, though again, the court cannot recommend remand on this basis based on the ALJ's recounting of this statement in his decision.  There was a five month period from August 31, 2001, through February 5, 2002, where Claimant was not seen at all, whether in person or by phone, at the Robert C. Byrd Health Sciences Center.  In addition, the contacts on February 5, 2002, April 9, 2002, and June 6, 2002, were all by telephone, so that Claimant was not actually seen in person at the Robert C. Byrd Health Sciences Center for a period of approximately nine months or from August 31, 2001, through June 10, 2002.  Indeed, the treatment note dated April 9, 2002, noted that Claimant was to make an in person appointment back in February of 2002, but had not.  As a result, Dr. McClellan refused to sign a medical excuse excusing Claimant from attending school because of her mental impairments.  It was not until Dr. Devaraj saw Claimant in person on June 10, 2002, that Claimant received a medical excuse for a brief period, but was cleared to return to class as of June 27, 2002.  (Tr. at 278.)   Claimant began treatment with Dr. Casdorph in July of 2002.

Ms. Kelly and the ALJ could have been more careful in their statements about when Claimant received treatment from the above sources.  Nevertheless, Ms. Kelly's statement in her report is generally correct, but for the fact that the gap in in person treatment was more like nine months and the fact that Claimant did

see Dr. Devaraj on June 10, 2002, at Robert C. Byrd Health Sciences
Center, just a month before she began treatment with Dr. Casdorph.
What is clear from the evidence of record is that most of the
treatment Claimant received from the Robert C. Byrd Health Sciences
Center over a nine month period was not in person and was largely
limited to telephone contacts, this despite the fact that Claimant
had been directed to make in person appointments.   When Claimant
finally had an appointment at the Robert C. Byrd Health Sciences
Center, she reported medication helped her condition.  Her mood was
anxious and her affect euthymic.   (Tr. at 134.)   Moreover, Dr.
Devaraj noted that Claimant could return to school as of June 27,
2002.  (Tr. at 278.)  While Claimant then began treatment with Dr.
Casdorph, his treatment notes are not included in the record and,
his extreme limitations on the Medical Source Statement of Ability
to do Work-Related Activities (Mental) are unsupported.

Thus, the court proposes that the presiding District Judge
find that any misstatement of facts by the ALJ was harmless and
inconsequential and that despite these misstatements, the ALJ's
decision is supported by substantial evidence.

Finally, Claimant argues that the ALJ adopted the vocational
expert's response to an inadequate hypothetical question.  Claimant
asserts that the hypothetical question ultimately adopted by the
ALJ did not include all of Claimant's limitations, particularly
those related to her impaired ability to concentrate.   Claimant

asserts that the ALJ should have adopted the vocational expert's
response to hypothetical questions that included limitations opined
by Dr. Casdorph and Ms. Kelly and in response to which the
vocational expert could identify no jobs. (Pl.'s Br. at 10-13;
Pl.'s Reply at 2-3.)

The court proposes that the presiding District Judge find that
the ALJ posed a hypothetical question that included all of
Claimant's limitations supported by substantial evidence of record.
Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989) (To be relevant or
helpful, a vocational expert's opinion must be based upon
consideration of all evidence of record, and it must be in response
to a hypothetical question which fairly sets out all of the
claimant's impairments.). The ALJ's residual functional capacity
finding and hypothetical question included the mental limitations
that Claimant was limited to routine, repetitive tasks, incidental
public contact and that she could not perform piece rate or
production line work. (Tr. at 23, 304.) In response, the
vocational expert identified the jobs of warehouse worker, vehicle
cleaner and groundskeeper. (Tr. at 305.) When limitations opined
by Dr. Casdorph were included in hypothetical question, the
vocational expert could identify no jobs. (Tr. at 305-07.) When
limitations from Ms. Kelly were included in a hypothetical
question, with "fair" being defined as unsatisfactory at least part
of the time or twenty-five percent of the day, the vocational

21

expert testified that

> [o]n several of those issues I believe the jobs that I
> gave the person could do.  That is a person would not
> need prolonged, or extended, attention, concentration
> with jobs I gave.  They, they would not have to work at
> pace because we've already talked about the fact that he
> wanted jobs that did not require production.  But if the
> person cannot be on the job eight house a day, five days
> a week, cannot complete a workday, cannot be punctual,
> cannot meet the demands of just being there, in my
> opinion, this person could not do work.

(Tr. at 308.)

The court has discussed in detail above, the reasons why the ALJ was justified in rejecting Dr. Casdorph's opinion on the Medical Source Statement of Ability to do Work-Related Activities (Mental).  The ALJ also was justified in rejecting Ms. Kelly's opinion on the Medical Source Statement of Ability to do Work-Related Activities (Mental) that she completed.  The ALJ correctly observed that Ms. Kelly's findings on the Medical Source Statement of Ability to do Work-Related Activities (Mental) were not consistent with "her clinical observations about the claimant's orientation, ability to interact, answer questions, and otherwise provide information as well as the longitudinal listing showing only conservative care."  (Tr. at 23.)

Furthermore, the ALJ's limitations in the hypothetical question he ultimately adopted adequately reflect Claimant's mental limitations as shown in the record.  Claimant received very conservative treatment.  Medication helped her condition.  At least one State agency medical source even opined Claimant's mental

22

impairments were not severe, the other opined that with medication, Claimant's condition should improve.  Claimant engaged in a variety of activities, including caring for her son, dating and riding a four-wheeler.  In short, the hypothetical question posed by the ALJ adequately contemplated those limitations supported by substantial evidence of record, and the court proposes that the presiding District Judge so find.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

<u>    June 8, 2005    </u>
Date

<u>Mary E. Stanley</u>
Mary E. Stanley
United States Magistrate Judge